# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 23, 2019

Lyle W. Cayce
Clerk

No. 18-20033
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RONALD F. KAHN,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-194-1

Before BARKSDALE, ELROD, and HO, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Ronald F. Kahn was convicted of conspiracy to commit health-care fraud and conspiracy to pay or receive health-care kickbacks, in violation of 18 U.S.C. §§ 371, 1347, 1349 and 42 U.S.C. § 1320a-7b(b)(2). He was sentenced, *inter alia*, to 60 months' imprisonment for each conviction, to run concurrently. Kahn contends: the evidence was insufficient to prove he had the requisite knowledge and intent to be convicted for either

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

offense; the district court abused its discretion in instructing the jury on deliberate ignorance; and the court erred by excluding defense evidence relating to Kahn's repayment of a Medicare overcharge.

Generally, Kahn's superseding indictment alleged a conspiracy to commit health-care fraud and a conspiracy to pay and receive health-care kickbacks among: Kahn, a medical doctor who owned and operated Lonestar Healthcare Group; Antonia Harris, a registered nurse who was the manager, administrator, and operator of Allied Covenant Home Health, Inc.; and Charles Harris, Antonia Harris' brother and a licensed social worker who was the owner and chief operating officer of Harris Healthcare Group (HHC).

The sufficiency challenges to Kahn's convictions were not properly preserved; therefore, review is only for plain error. *E.g.*, *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012). Under that standard, Kahn must show a forfeited plain (clear or obvious) error that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he does so, we have the discretion to correct the reversible plain error, but should do so only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings". *Id.* For a sufficiency challenge, an error is "clear or obvious" only when the record is "devoid of evidence pointing to guilt" or "the evidence of a key element of the offense is so tenuous that a conviction would be shocking". *United States v. Suarez*, 879 F.3d 626, 630–31 (5th Cir. 2018) (cleaned up and citations omitted).

For the sufficiency challenge to his conviction for conspiracy to commit health-care fraud, Kahn does not dispute the Government proved Charles and Antonia Harris were engaged in a conspiracy to defraud Medicare. Rather, Kahn asserts the evidence is insufficient to show he had knowledge of the conspiracy and intentionally joined it to further its unlawful purpose.

No. 18-20033

To establish a conspiracy to commit health-care fraud, the Government must prove:  defendant and one or more other persons made an agreement to commit health-care fraud; "defendant knew of the unlawful purpose of the agreement"; and "defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose".  *United States v. Willett*, 751 F.3d 335, 339 (5th Cir. 2014) (citation omitted); 18 U.S.C. §§ 1347, 1349.  An agreement between conspirators "need not be formal or spoken, but can be inferred from concert of action".  *United States v. Dailey*, 868 F.3d 322, 329 (5th Cir. 2017) (citation omitted), *cert. denied*, 138 S. Ct. 715 (2018).  Each element of a conspiracy, including knowledge and intent, may be established by direct evidence or inferred from circumstantial evidence.  *Willett*, 751 F.3d at 339–40.

Viewing the evidence in the requisite light most favorable to the prosecution, *id.* at 339, a reasonable factfinder could infer Kahn's knowledge of the conspiracy, his intent to join it, and his specific intent to defraud Medicare.  There was evidence Kahn prepared and submitted claims to Medicare for services he did not perform, and Medicare paid him for these fraudulent claims; Kahn, in his capacity as a Medicare provider and treating physician to a Medicare beneficiary, signed Medicare claim forms for both Charles and Antonia Harris; and these claims, which were paid by Medicare, were also fraudulent.  From this evidence, a reasonable juror could infer that Kahn knew of the fraudulent agreement he had with the Harrises, and intended to further it by knowingly submitting false claims and assisting with the submission of false claims.  *See Dailey*, 868 F.3d at 328–29; *United States v. Mauskar*, 557 F.3d 219, 230 (5th Cir. 2009).  Accordingly, especially given the deference owed the jury, there was no clear-or-obvious error regarding

3

Kahn's sufficiency challenge to his conviction for conspiracy to commit health-care fraud. *See Dailey*, 868 F.3d at 329.

As noted, for his sufficiency challenge to his conviction for conspiracy to pay and receive health-care kickbacks, Kahn again asserts the evidence is insufficient to show knowledge and intent. The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2), "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a Medicare provider for services to be paid for by the Medicare program". *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004). "In order to obtain a conviction under this statute, the Government must show that a defendant:  (1) knowingly and willfully made a payment or offer of payment, (2) as an inducement to the payee, (3) to refer an individual, (4) to another for the furnishing of an item or service that could be paid for by a federal health care program." *Id.* at 479–80 (citation omitted).

The Government asserted at trial that Kahn agreed to pay Charles Harris a percentage of Medicare payments Kahn received for facet-joint injections performed on patients referred to him by HHC, and that this payment was an illegal kickback for such patient referrals. The evidence at trial showed:  Kahn paid Charles Harris 25% of the Medicare payments Kahn received for such injections performed on patients referred to Kahn by HHC; and, if Kahn did not receive payment from Medicare on a claim, Kahn would not pay Charles Harris. The evidence also showed:  the payments from Kahn to Charles Harris were not set amounts per month; and the evidentiary documents relating to the payments did not in any way denote these payments were rental or lease payments.

In support of this insufficiency claim, Kahn understandably cites to the testimony of Darpino, Lonestar's office manager, who testified:  the payments

from Kahn to Charles Harris were lease payments for the use of a room and an assistant at HHC when Kahn performed facet-joint injections on patients at HHC; and Darpino was the person who negotiated this lease contract with Charles Harris. As Kahn's contentions are based on his assessment of the credibility of trial witnesses, in particular Darpino, his contentions "must fail [because] credibility determinations are within the sole province of the jury". *United States v. Marrero*, 904 F.2d 251, 257 (5th Cir. 1990) (citation omitted); *see also United States v. Mata*, 491 F.3d 237, 242 (5th Cir. 2007). "[T]his Court is bound to accept credibility determinations made by the jury unless the challenged testimony is so unbelievable on its face that it defies physical laws". *Marrero*, 904 F.2d at 257 (internal quotation marks and citation omitted). The jury could infer from the evidence that the nature and purpose of the payments Kahn made to Charles Harris were kickbacks or commissions for Charles Harris' referral of Medicare beneficiaries to Kahn. Therefore, there was no clear-or-obvious error regarding Kahn's sufficiency challenge to his conviction for conspiracy to pay and receive health-care kickbacks.

Kahn next challenges the court's giving a deliberate-ignorance instruction. He asserts the instruction was not warranted and misstated the law. Unlike his two above-discussed sufficiency challenges, this issue was preserved; therefore, the use of the deliberate-ignorance instruction is reviewed for abuse of discretion, viewing "the evidence and all reasonable inferences therefrom in favor of the government". *Delgado*, 668 F.3d at 227 (internal quotation marks and citation omitted).

A deliberate-ignorance instruction is warranted when: "defendant claims a lack of guilty knowledge"; and the evidence at trial supports an inference that defendant "was subjectively aware of a high probability of the existence of the illegal conduct", and "purposely contrived to avoid learning of

the illegal conduct". *Id.* (internal quotation marks and citations omitted). For the reasons that follow, including the evidence at trial and Kahn's defense at trial that he lacked knowledge of the conspiracies to defraud Medicare and pay and receive kickbacks, the court did not abuse its discretion by giving the deliberate-ignorance instruction.

First, the evidence regarding Kahn's having knowledge of the conspiracies and intentionally joining them also suggests Kahn had a subjective awareness of the high probability of illegal conduct. Second, the evidence supports a conclusion that Kahn purposely avoided learning of illegal conduct. *See United States v. Nguyen*, 493 F.3d 613, 621 (5th Cir. 2007). Kahn spent time at HHC where the patients were socializing, watching television, playing cards, playing board games, and going on outings. He also signed every Medicare form presented to him by Antonia Harris without asking one question. Kahn, a Medicare provider and owner of Lonestar, chose not to ask questions even though he was obligated to know the answers to the questions he chose not to ask. Kahn's lack of inquiry "suggests a conscious effort to avoid incriminating knowledge". *Id.* (internal quotation marks and citation omitted). Accordingly, there was no abuse of discretion. *See Delgado*, 668 F.3d at 227.

Furthermore, our court has held the Fifth Circuit pattern instruction on deliberate ignorance, which was given to the jury, is a correct statement of the law as enunciated by the Supreme Court in *Global-Tech Appliances v. SEB S.A.*, 563 U.S. 754 (2011). *United States v. Brooks*, 681 F.3d 678, 702 (5th Cir. 2012). This forecloses Kahn's contention that the instruction was a misstatement of the law. *See United States v. Kuhrt*, 788 F.3d 403, 416 n.4 (5th Cir. 2015).

Kahn's final claim is that he should have been allowed to introduce specific-act evidence to prove his law-abiding character and to demonstrate he

did not act with the necessary criminal intent for the charged offenses. As Kahn recognizes, controlling precedent precludes this claim. Defendant may only present evidence of specific instances of conduct when his "character or character trait is an essential element of a charge, claim, or defense". FED. R. EVID. 405(b); *see Marrero*, 904 F.2d at 259–60. Kahn's character was not an essential element of the charges against him. *See Marrero*, 904 F.2d at 260. Additionally, with respect to his lack-of-intent defenses, his attempted use of "specific acts circumstantially to prove lack of intent . . . is not only disfavored, it is not permitted under Rule 405(b)". *Id.* Accordingly, there was no abuse of discretion in excluding Kahn's specific-acts evidence. *Id.*

AFFIRMED.