United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 15, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 05-30003

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES CAIN,

Defendant - Appellant.

Appeal from the United States District Court
For the Eastern District of Louisiana

Before REAVLEY, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

James Cain appeals his jury conviction and sentence for possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1), possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 2), and using, carrying, and brandishing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3).

1

I

Four New Orleans police officers in two unmarked vehicles stopped a car that they had earlier observed speeding through a high-crime area of the city. After the vehicle came to a halt, Cain exited, removed a revolver from his waistband, and took flight. An officer in the lead police vehicle gave chase on foot. As Cain reached an intersection, the second police vehicle pulled up in an attempt to block his escape. In response, Cain raised his revolver toward the vehicle, forcing the driver to turn out of the line of fire. As he ran by, Cain pointed his revolver at the vehicle and at the officer who was still pursuing on foot. The two officers in the second police vehicle joined the chase and the four men ran through the city streets until they entered an enclosed lot with no exit. Finding his escape blocked, Cain turned and again pointed the revolver at the officers. This time the lead officer responded, discharging his service revolver and injuring Cain.

The officers subdued the now-injured man, secured his weapon, and searched him. They discovered a small plastic bag containing pieces of cocaine base totaling 2.4 grams, including ten $20 pieces, five to eight $10 pieces, and several $5 pieces. The officers estimated that Cain possessed cocaine base with a total street value of approximately $400. The search produced no drug paraphernalia, no pager or cell phone, and only $10.35 in cash. A later blood test revealed no evidence of cocaine use.

A jury found Cain guilty on each count. The district court sentenced Cain to 199 months imprisonment (the top of the Guidelines range), which included a three-point sentencing enhancement for assaulting the police officers pursuing him.

II

On appeal, Cain asserts that: (A) the district court erred by refusing to instruct the jury that

2.4 grams of cocaine base, by itself, was not sufficient to prove an intent to distribute; (B) there was insufficient evidence to establish an intent to distribute; and (C) the sentence was enhanced in violation of *United States v. Booker*, 543 U.S. 220 (2005).

A

Cain appeals the district court's rejection of a proposed jury instruction. We review a district court's refusal to give a requested jury charge for an abuse of discretion. *United States v. O'Keefe*, 426 F.3d 274, 277 (5th Cir. 2005). The district court retains substantial latitude in formulating its jury charge, *United States v. Pettigrew*, 77 F.3d 1500, 1510 (5th Cir.1996), and we will reverse "only if the requested instruction is substantially correct; was not substantially covered in the charge as a whole; and if the omission of the requested instruction 'seriously impaired the defendant's ability to present a given defense,' " *United States v. Williams*, 132 F.3d 1055, 1061 (5th Cir. 1998) (quoting *United States v. Tannehill*, 49 F.3d 1049, 1057-58 (5th Cir. 1995)).

Cain proposed an instruction which purported to explain the circumstances under which an inference of intent to distribute under 21 U.S.C. § 841 may arise:

> Intent to distribute may be inferred from possession of an amount of controlled substance that is too large to be used by the possessor alone. But a quantity that is consistent with personal use does not raise such an inference in the absence of other evidence. *As a matter of law, 2.4 grams of cocaine base, by itself, is not enough to raise an inference of intent to distribute.*

(emphasis added). The district court accepted the instruction in part, excising the last sentence. Cain asserts that this was reversible error because this court in *United States v. Skipper*, 74 F.3d 608 (5th Cir. 1996), and *United States v. Hunt*, 129 F.3d 739 (5th Cir. 1997), established that the mere possession of 2.4 grams of cocaine base is insufficient as a matter of law to establish intent.

Under the Supreme Court's decision in *Turner v. United States*, 396 U.S. 398, 423 (1970),

3

upon which both *Skipper* and *Hunt* rely, the critical determination for the jury is simply whether the quantity at issue is consistent with personal use. Here, the district court's instruction substantially covered the relevant statement of law by adequately informing the jury of its task: *i.e.*, to determine whether the quantity is consistent with personal use and, if so, to find no inference of an intent to distribute without other evidence.[1] No further instruction was needed. In addition, excision of the final sentence from Cain's proposed instruction did not seriously impair Cain's ability to present a defense. Cain was in no way precluded from producing evidence that the amount was consistent with personal use, nor was he precluded from arguing that the Government had failed to present sufficient evidence to show an intent to distribute cocaine base. Accordingly, we hold that the district court did not abuse its discretion in rejecting the proposed instruction.

B

Cain next argues that the evidence presented at trial was insufficient to support his conviction for possession with intent to distribute cocaine base. "The standard for evaluating the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the government, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Williams*, 132 F.3d at 1059. "The essential elements of possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841 are 1) knowledge, 2) possession, and 3) intent to distribute the controlled substances." *United States v. Delgado*, 256 F.3d 264, 274 (5th Cir. 2001). Cain contends that the evidence was insufficient to establish an intent to distribute.

---

[1] We disposed of both *Skipper* and *Hunt* on the facts presented, cognizant that the critical inquiry is solely whether the quantity at issue is consistent with personal use. *See United States v. Majors*, 328 F.3d 791, 796 (5t h Cir. 2003) ("No minimum quantity of the controlled substance is required" to establish an inference of an intent to distribute).

The form and amount of the cocaine base recovered is some evidence of an intent to distribute. The 2.4 grams had been broken into over thirty separate pieces. The Government elicited testimony establishing that these pieces could be sold for between $5 and $20, and that Cain possessed an amount worth approximately $400. *See Majors*, 328 F.3d at 796 (value and quality of cocaine base evidence of intent to distribute); *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1095-96 (5th Cir. 1991) (intent may be inferred from drug quantity, purity, and value). In addition, two police officers testified that they had never arrested a drug user with such a large amount of cocaine base. These officers further testified that cocaine base is usually smoked through a crack pipe but that, when arrested, Cain did not possess a pipe or other drug paraphernalia consistent with cocaine base use. *See United States v. Onick*, 889 F.2d 1425, 1431 (5th Cir. 1989) (inference of intent from presence of small amount of drugs and drug paraphernalia); *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992) (finding "distribution paraphernalia, large quantities of cash, or the value and quality of the substance" probative of intent). Furthermore, the Government demonstrated that Cain had no cocaine base in his system on the night he was arrested—probative evidence that Cain was not a current user. *See United States v. Gamble*, 388 F.3d 74, 77 (2d Cir. 2004) (finding ample evidence of intent to distribute where police recovered 1.7 grams of cocaine base in twenty-six zip-lock bags and where there was no evidence that the defendant smoked or otherwise ingested the cocaine base himself). Finally, Cain's use of a gun to evade lawful capture is again some evidence of an intent to distribute. *See United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987) ("This court has recognized that firearms are 'tools of the trade' of those engaged in illegal drug activities and are highly probative in proving criminal intent."); *Hunt*, 129 F.3d at 743-44 (distinguishing the probative value of the mere presence of a gun from a situation in which a defendant reaches for a gun

5

after police enter a residence).[2]

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could find that Cain possessed an intent to distribute cocaine base.[3]

C

Finally, Cain contends that the application of the three-point enhancement under U.S.S.G. § 3A1.2(b) for aiming a firearm at the pursuing officers violated his Sixth Amendment rights under *United States v. Booker*. *See United States v. Pineiro*, 410 F.3d 282, 284 (5th Cir. 2005) (stating that where a defendant's sentencing range is increased based on facts not found by a jury or admitted by the defendant, the sentence violates the Sixth Amendment).[4] The enhancement applies if, "in a

---

[2] Cain protests that evidence of a similar type and quantum was found insufficient in *Skipper* and *Hunt*. In *Skipper*, police officers conducting a traffic stop recovered 2.89 grams of crack cocaine and a razor blade from the defendant. Other than arguing the absence of drug paraphernalia, the government presented no other evidence to prove the defendant had an intent to distribute the crack cocaine. *See Skipper*, 74 F.3d at 611 (finding the razor blade not relevant to intent and stating that "[p]araphernalia that could be consistent with personal use does not provide a sound basis for inferring intent to distribute"). Distinguishing the instant case from *Skipper* is the presence of other evidence demonstrating that Cain possessed an intent to distribute. *Hunt* is also distinguishable. There, police officers executing a search warrant on the defendant's house discovered 7.998 grams of crack cocaine broken into one large rock and several smaller pieces. Police also discovered a gun, marijuana and related paraphernalia, and a razor blade. At first blush, the quantum of evidence found insufficient in *Hunt* seems greater than that offered against Cain. *Hunt*, however, involved an assessment of the evidence of intent to distribute found in a home, where the expected incidents of drug trafficking and drug use can easily overlap and where the amount and type of evidence supporting an intent to distribute may differ from that for a street stop. *See United States v. Lucien*, 61 F.3d 366, 375-76 (5th Cir. 1995) (finding that the presence of guns and a large amount of cash in an apartment did not require a finding of intent to distribute).

[3] Because we refuse to reverse the jury verdict for possession with intent to distribute cocaine base, Cain's argument that reversal of his conviction for using, carrying, and brandishing a firearm during and in relation to a drug trafficking crime is moot.

[4] Cain objected to the enhancement as contrary to the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). As his sentence was imposed prior to the Court's decision in *Booker*, this objection was sufficient to preserve error. *Pineiro*, 410 F.3d at 285-86.

manner *creating a substantial risk of serious bodily injury*," the defendant "knowing or having reasonable cause to believe that a person was a law enforcement officer, *assaulted such officer* during the course of the offense or immediate flight therefrom . . . ." U.S. SENTENCING GUIDELINES MANUAL § 3A1.2(b) (2003) (emphasis added).

We find that Cain's Sixth Amendment rights were violated because the jury did not necessarily find that Cain aimed a firearm at the officers or otherwise engaged in conduct that constituted an assault that created a substantial risk of serious injury. First, the superseding indictment does not allege that Cain brandished a firearm *at the pursuing officers*, only that he brandished the weapon in connection with a drug trafficking crime. Second, although the jury charge included an instruction on "brandishing," this instruction did not require the jury to find an "assault" that "created a substantial risk of serious bodily injury" such that a conviction on this count would also support an enhancement under U.S.S.G. § 3A1.2(b).[5] Finally, there is nothing in the jury verdict form that would indicate that the jury found that Cain brandished his weapon in such a way as to constitute an "assault" on the police officers.[6]

---

[5] The district court merely instructed the jury that: "To prove the defendant 'brandished' a firearm, the Government must prove that the defendant displayed all or part of a firearm, or otherwise made the presence of a firearm known to another person, regardless of whether a firearm was directly visible to that person." Of note, the statute itself defines "brandish" to include the display of a firearm "*in order to intimidate* [a] *person*." 18 U.S.C. § 924(c)(4) (emphasis added). Had the jury been instructed using the entire statutory definition, a jury conviction for brandishing might support an inference that the jury necessarily found an "assault" that "created a substantial risk of serious bodily injury" under U.S.S.G. § 3A1.2(b).

[6] Although Cain concedes on appeal that deliberately pointing a firearm at the officers might create a substantial risk of serious injury, he argues that the evidence at trial did not necessarily establish that he "pointed" a weapon at the officers. The record contains testimony that Cain "raised" and/or "pointed" a pistol. Because "rais[ing]" a pistol does not necessarily constitute an "assault" but is sufficient to constitute "brandishing," we are unable to conclude that the jury necessarily based its verdict on a finding that he "pointed" a pistol at the officers.

7

We do not find the district court's error harmless under Rule 52(a) of the Federal Rules of Criminal Procedure. *See United States v. Mares*, 402 F.3d 511, 520 n.9 (5th Cir. 2005) (court will ordinarily vacate sentence and remand unless error is harmless); *United States v. Akpan*, 407 F.3d 360, 376 (5th Cir. 2005) ("The government must bear the burden of demonstrating that the error was harmless by demonstrating beyond a reasonable doubt that the federal constitutional error of which a defendant complains did not contribute to the sentence that he received."). Although there is some indication in the record that the district court would have imposed the same or a harsher sentence under an advisory Guidelines scheme, it did not expressly state such an intention. *Cf. United States v. Saldana*, 427 F.3d 298, 314 (5th Cir. 2005) (finding harmless error where the district court departed upwardly and stated that even if the Guidelines were held to be unconstitutional, the court would sentence the defendant to the same term of imprisonment). Without such a statement, we have rejected the claim that a sentence above the minimum in the Guidelines range is alone sufficient to establish harmlessness. *See United States v. Garza*, 429 F.3d 165, 171 (5th Cir. 2005) (stating that "this Circuit has rejected the claim that a court's decision to sentence in the middle of a Guidelines range establishes *Booker* error as harmless"); *United States v. Woods*, ) ) F.3d ) ), 2006 WL 163475, at \*3 (5th Cir. Jan. 24, 2006) (concluding that a sentence imposed at the top of the Guidelines range is not sufficient to establish harmless error beyond a reasonable doubt). Because the Government cannot prove that the error was harmless, we vacate the sentence and remand. *See Mares*, 402 F.3d at 520 n.9.

## III

For the reasons stated, we AFFIRM the conviction, but VACATE the sentence and REMAND for sentencing consistent with this opinion.

REAVLEY, Circuit Judge, dissenting in part:

I concur in affirming the conviction but see no justification for vacating the sentence. The only problem with the sentence is that the enhancement was imposed when the law made the guidelines mandatory. So we go through the harmless inquiry, wondering what the sentence would have been if the judge had known that the guidelines were not mandatory. It would be more sensible to remand the case to the judge for the decision whether to resentence. Almost always a mere order would be entered, without burdening the marshal to retrieve the defendant and the judge to go through resentencing.